CHARLES TUNNELL, executor of ISAAC TUNNELL, deceased,

*vs.*

BENJAMIN D. BURTON, administrator d. b. n. of MIERS BURTON, deceased, *et al.*

———

BENJAMIN D. BURTON, administrator of MIERS BURTON, deceased,

*vs.*

CHARLES TUNNELL and JOSEPH KOLLOCK.

*Sussex, Mch. T. 1871.*

Where an administrator has been removed and suit brought against him and his sureties in the administration bond, to recover the undistributed balance remaining in his hands, a judgment rendered in such suit, upon the award of referees, is conclusive as to such balance.

Under the circumstances of the case, it is an available defense to the sureties of an administrator under a judgment against them and him to shew that some next of kin had received, and that others had released their shares of the judgment.

Four distributees joined in a release to the administrator of an estate, the consideration being the assignment of certain property to trustees for the benefit of three of the releasors, the other party to the release having received nothing, and having afterwards become administrator d. b. n. of the same estate, was held to be concluded by the release from any claim as a distributee of the estate.

Where the testimony of a witness had been taken, and subsequently, under an order to make new parties, he was joined as a defendant and filed his answer, his deposition was not permitted to be read.

BILL FOR INJUNCTION TO STAY PROCEEDINGS AT LAW.—The facts of this case, as found by the Court, were substantially as follows :

George Tunnell, one of the administrators of Miers Burton, deceased, was removed from his administration on October 2, 1842. He had previously passed three testamentary accounts, shewing large unappropriated balances in his hands distributable between the widow and children of the intestate, amounting in the whole to $31,762. Upon exceptions to his last testamentary account, the Orphans' Court surcharged that account by the amount of $5,481.57, which increased the sum of the unappropriated balances in his hands for distribution to $37,244.17. Out of these balances, Tunnell had, as was shewn by the distributive accounts, passed with the several testamentary accounts, distributed to the widow and children, before his removal, considerable sums, amounting, in the whole, to $16,396,97, but leaving still in his hands at the time of his removal, so far as the accounts shew, a large sum undistributed.

After the removal of said administrator, and on or about May 14, 1844, Isaac Tunnell, one of the sureties of said administrator, paid to Woolsey Burton, the remaining administrator of Miers Burton, deceased, the sum of one thousand dollars, as appears by the first administration account of Woolsey Burton ; and also, after the removal of said administrator, at sundry times between December 17, 1842 and March 8, 1845, sundry sums of money, amounting in the whole to the sum of $3,147.30, were paid by the assignees in trust of George Tunnell, to the guardians of the three younger children of Miers Burton, deceased, on account of their shares of his personal assets, which had been received by George Tunnell, as one of said intestate's administrators, as appeared by the account of said assignees in trust, filed in the Court of Chancery for Sussex County, in a certain suit, wherein Paynter Jefferson

was complainant, and the said assignees were defendants. After the removal of said George Tunnell from the administration, and at the April Term, 1844, of the Superior Court for Sussex County, a suit was brought on his administration bond, against himself and his sureties, in which suit, under an award of referees made on April 19, 1850, the balance then due from George Tunnell as administrator, was ascertained as being the sum of $28,468.99, for which sum judgment was rendered. The bill alleged that this award was excessive, and that it included the partnership effects of Burton and Tunnell, and that the referees had no certain evidence, but depended upon Woolsey Burton's representations, all of which were denied by the answer.

It further appeared from the administration accounts of Woolsey Burton, that after the rendition of the aforesaid judgment at sundry times between May 14, 1850, and March 16, 1857, there were collected and received by Woolsey Burton, as the remaining administrator of the intestate, from the sureties of George Tunnell, in his administration bond, sundry sums of money, amounting to the sum of $1,893.96 on account of the aforesaid judgment, which said sums of money, being credited to the judgment, left due upon it a balance of $27,785.21, with interest from January 8, 1851, which balance and interest represented the undistributed assets of the estate of Miers Burton, deceased, which at that date—January 8, 1851—were chargeable to George Tunnell and his sureties, and which said balance, subject to any debts against the estate of the said intestate then remaining unpaid, would be, when collected, distributable and payable to and among such of the said next of kin of the said intestate as should not have received their full shares of the whole unappropriated balance of personal estate of the deceased, or should not have released their interests in said estate.

There was no evidence that any debts against the

estate of the said Miers Burton, deceased, remained out-standing ; and therefore, any sums which might be collected upon the judgment would be distributable among the next of kin of the intestate.

The whole amount of the undistributed balance collected by George Tunnell was, as before stated, $37,244.17, of which one-third, or $12,414.72 was payable to Elizabeth Burton, the widow, and one-eighth of the remaining two-thirds, or $3,103.68, was payable to each of the eight surviving children, who were Mary A., wife of Joshua H. Irons ; Sally, widow of Gideon Waples ; Woolsey, Edward, Benjamin D., Martha D., John M., and Hannah E. Burton.

On August 16, 1842, George Tunnell assigned all his estate, including real estate, goods and *choses* in action, to these persons in trust to indemnify his sureties in the administration, and also in the guardianship of the younger children, and at the same time, gave his judgment bond for a debt of $15,000, upon which judgment was entered. March 3, 1843, the trustees re-conveyed to Tunnell the real estate, and on March 7, the real estate was sold under the judgment. In March 1846, an effort was made by creditor's bill in equity, at suit of Paynter Jefferson, to set aside the assignment, but it was sustained by the Court of Errors and Appeals at the June Term 1849, and the trustees were ordered to account in chancery, to pay Jefferson's debt, and to hold the residue to indemnify the sureties.

Afterwards, Woolsey Burton removed from the State, and on May 12, 1857, administration d. b. n. was granted to Isaac H. Houston.

The bill alleged that George Tunnell, while administrator, before his removal "paid and satisfied in full to " Irons and wife, Sallie Waples, Woolsey, Edward, and to " the guardian of Benjamin D. Burton, being all the heirs

49—DEL. CH. IV.

"at law and distributees, except the three younger chil-
"dren for whom George Tunnell was guardian, all their
"and each of their respective distributive shares or pro-
"portions of the personal estate which came to his hands;
" also to Elizabeth Burton, the widow, and that they had
"no right or interest in the judgment recovered against
" the sureties."

The bill alleged a loss of the receipts for the pay-
ments to the older distributees, through the lapse of time
and the removal of George Tunnell to Philadelphia, and
his death September 23, 1863; and there was no evidence
of any release by the older heirs, of any claim they have
under the judgment.

The answer denied, upon information and belief, that
George Tunnell, before his removal or after, satisfied to
the elder distributees, their shares of the personal estate of
Miers Burton, deceased, and as to the defendant's share,
denied positively. It admitted payments by Isaac Tunnell
on the judgment, to the amount of $1500, and averred
that the elder distributees had an interest in the judgment
and never sued or claimed against the sureties, because
they looked to the administrator, who alone could pro-
ceed on the judgment.

The surviving trustees, on May 8, 1861, at the request
of the three younger distributees, and also of Benjamin D.
Burton, assigned to the three younger distributees, the
the whole trust estate then remaining; and in considera-
tion of this assignment, these distributees, on that date,
executed a release to the sureties in the administration
and guardianship of all their interest in the judgments, and
also of all liability on the part of the sureties. Benjamin
D. Burton joined in this release. It was alleged in the
bill and denied by the answer, that, at the time of said
assignment, it was represented by the younger distributees
and Benjamin D. Burton, that the elder distributees had
been fully satisfied and had no interest in the trust estate,

and it was so understood by the trustees ; and also, that the elder distributees had notice from the trustees of the proposed assignment, and of the time and place, but made no objection or demand, wherefore they are estopped from any claim against Isaac Tunnell or his estate under this judgment.

The release to the sureties executed under date of May 8, 1861, by John N., Benjamin D., Martha D. Burton, and by George P. Morrison, in right of his wife, and Hannah E. Burton, with George and Isaac Tunnell, then the surviving obligors, was in evidence.

On April 15, 1882, Houston having died, administration *d. b. n.* was granted to the defendant, Benjamin D. Burton, and in April 7, 1873, Isaac Tunnell died, and on the 17th of the same month, letters testamentary were granted to Charles Tunnell, the complainant.    On April 24, Benjamin D. Burton, Administrator, was made a party to the judgment, and at the April term, 1866, *a scire facias* was sued out upon the judgment.

The prayer of the bill was for an injunction against the *scire facias* and against any other proceeding against the defendant, as the executor of Isaac Tunnell, deceased, with reference to the said suretyship.    The controversy involved the question whether there was a subsisting judgment, and if so, whether it had been paid.    This involved the question of payment to the elder heir, and also a release by the younger heirs so as to prevent the administrator from proceeding ; or whether there was in law any release at all as against the administrator.

The original cause came to a hearing at the March Term, 1868.

*Robinson*, for the complainant.

The elder heirs, having been paid, as is alleged by the bill, and not satisfactorily denied by the answer, which

is evasive, the release by the younger heirs assumes to relieve the sureties from liability on the administration bond, and, in consequence, operates to release them from this judgment, it being to enforce their liability on the bond; otherwise, the release is nugatory. Here arises the legal question, will the release of the heirs justify the Court in restraining the administrator? The administrator, though the legal owner, is yet, in equity, only a trustee, and can claim only to secure the rights of the benefic- aries.   I. *Madd, Ch. Pr.* 577-8 ; *Jer. Eq.* 537.

The *cestui que trust* has power over the trust estate I. *Madd, Ch. Pr.* 452.   If the administrator were to re- cover, to whose use, and to what purpose could he collect it, if payable to no one?   The heirs had a right to assign their interest, and if so, might release. A consideration stated cannot be controverted to impeach the deed. *Add. on Cont.* 10.

Even without an actual consideration, the release is valid if without fraud.   I. *Ves. Sr.* 127.

The release is be considered in connection with all the circumstances ; that this judgment, in effect, belonged to them ; the property assigned to indemnify the sureties in both bonds, but in fact, the sureties on the adminis- tration bond alone were found liable.   They, therefore, applied the funds to indemnify them by assigning the property to the heirs, not as wards, but as next of kin. The ground of equity is, that there were no debts out- standing.   Only the heirs were interested.   The older heirs, upon the proof, paid their share of the assets into George Tunnell's hands. The younger ones had released. There was, therefore, no object for which the judgment should be collected.

*Layton,* for the defendant.

The judgment is valid and subsisting,—made on the

award of disinterested referees, on the appearance of defendants by counsel, and confirmed by the Court.  Neither its legal effect nor its justice can be impeached.  There was no objection that it was excessive, made at the return of the award, and it is too late now.

The proceeds of the judgment belong to the administrator d. b. n. first to pay the debts—and such the defendant swears there are—and second, subject to this, to distribute the money among the next of kin.  With respect to the alleged payment to the older heirs, the answer denies it, no vouchers were shown to establish it, and the testimony adduced is hearsay.  The release by the younger heirs to the sureties, is not available as a defense against the administrator.  He alone is entitled to receive the assets, and no valid payment could be made to the heirs. *Rev. Code, pp.* 297, 299, 303, 304; 1. *Wms. on Ex'rs,* 555—6; 2 *Ib.* 663—4.

Benjamin D. Burton's having joined in the release before taking letters, would not bar his collecting the judgment. The executor may release before taking letters, because he has power from the death of the testator. · It is otherwise as to the administrator.  1 *Wms. on Ex'rs.* 173, 264—5; 3 *Co. Rept.* (*5th book,*) 29; 1 *Salk.* 295; 3 *Preston on Abst.*, 146.

The next of kin cannot surrender a leasehold without taking letters of administration.  1 *Wms. on Exrs.* 255-6; 5 *B & A.* 188 ; 3 *Bing.* (*N. C.*) 341.  Nor can the next of kin collect or release a debt due the estate.  4 *Cr. Dig.* 73.

A creditor of the intestate cannot attach assets, 2 *Harring.* 349, and a distributive share cannot be attached before this distribution.  3 *Harring.* 267.

The next of kin have no power to release the trust funds or the trustees, because there was no privity of estate, and they have no power or right over the judgment.

THE CHANCELLOR, having heard the argument, considered that, under the circumstances, it would be an available defense to the sureties in the judgment to shew against the administrator that some next of kin had received, and that others had released their shares of the judgment, and that the main question in controversy was, as to the fact of such receipt and release ; and in order that it might be tried between proper parties at the September Term, 1868, it was ordered that the cause stand over and that all the next of kin, or the legal representatives of such of them as were deceased, should be joined as defendants.

This was done, their answers filed and further testimony taken. A new bill was filed by Benjamin D. Burton, as administrator *d. b. n.* of Miers Burton, deceased, against Charles Tunnell and Joseph Kollock, the object of which was to set aside the release relied on in the bill of Tunnell's executor against Burton's administrator, upon the ground that the complainant signed the release, not knowing its effect and being informed by the trustees that it was only a release of the sureties in the guardian bond. It was also alleged by the complainant Burton, upon information and belief, that the other children signed under the same belief, and that there was no valid consideration for the release. This bill prayed that the release be decreed void, and that the injunction issued in the other suit should be dissolved, and that Tunnell should be enjoined from pleading the release in any suit and required to pay the surplus into Court.

The first case came to a re-hearing, together with the latter case, at the March Term, 1872. At the hearing, *Layton*, for the defendant, in the first case, was proceeding to read the depositions of John M. Burton, James Ponder, George P. Morris, and William E. Burton, read at the first hearing, when *Robinson* objected, on the ground that these persons were now parties. The validity of the objection

was admitted as to William E. Burton, who had filed his answer, but it was insisted that the depositions of the others should be read, because they had not answered as defendants. Pending the discussion, the objection was withdrawn and the depositions read. The hearing then proceeded.

*Robinson*, for the complainant.

There are but two questions involved ; one of fact and one of law.

*First :* The question of fact is, whether the older heirs have received their share of the estate collected by George Tunnell. A strong preliminary circumstance bearing on this question is, that the complainant, Benjamin D. Burton, one of the older heirs, was the very person who procured this release, under representations that the older heirs had been settled with. The accounts shew that each of them had been settled with.

*Secondly :* Where distributees have been unequally paid, further assets collected must be first applicable to make up the deficiency of those who have received unequally. The Court would restrain the administrator from continuing to pay one set of heirs unequally.

We here propose to work the same result by giving effect to the younger heirs' release as to assets which, if collected, would belong to them. 1 *Sto. Eq. Jur. Sec.* 64, *f ;* 1 *Inst.* 24, *b.*

This doctrine applies to creditors. 2 *Wms. on Ex'rs* 892.

A creditor having taken priority out of legal assets, will be postponed to others as against equitable assets. 1 *Sto. Eq. Jur. Sec.* 557 ; 2 *P Wms.* 416.

The creditor coming in after the legacies are part paid, shall take out of the unpaid assets only a proportion

of the debt before the rest must proceed against the legatees paid. 2 *Wms. on Ex'rs*, 1163, 1169. One case upon this principle, corresponds with the present one. *Wilmott vs. Jenkins*, 1 *Beav.* 401.

The only difference is, that that was a case of legatees ; this a case of distributees. The facts proved present this case ; Isaac Tunnell left $10,000 or $12,000. Supposing this to be recovered by the administrator of Miers Burton, it clearly would belong to the younger heirs. The sureties of George Tunnell were entitled, under the decree of the Court, to hold the assigned securities to indemnify themselves. They did so by settling with the younger heirs, the parties then and now really entitled. They were induced to this by the complainant in the last suit ; he did not come here with clean hands. But for him, we might have held the trust funds, *i. e.*, paid the $1100 now claimed and have kept the trust funds, the property of George Tunnell, as our indemnity.

*Layton*, for the defendant.

I shall confine myself to the three points suggested by the Chancellor as now open.

1. Upon the question whether there were any debts outstanding, we rely upon the answer.

2. As to whether the older heirs had been paid, the preponderance of the proof is against the payments in full.

3. Was the release executed, and is it valid ? We did not contest its execution, but deny its operation further than to discharge the sureties in the guardianship. Such was the design, as shewn upon its face, and by the testimony of John M. Burton and Miers Burton. The release executed in May, 1861, does not touch the balance in Woolsey Burton's hands. It would, therefore, be absurd to suppose it was intended to release their interest in

Miers Burton's estate, of which Woolsey Burton's balance in hand was a part.

It is unnecessary to comment on the authorities cited on the other side, because, in this case, there is no inequality,—the ground upon which those cases rest.

*Cullen*, for the defendants in the bill of Burton's administrator *vs.* Tunnell and Kollock.

The absence of any evidence as to any claim by the older heirs of the fund held by the trustees, or any claim since, except by this complainant, tends strongly to show that nothing was due. All that the answers mean is, that they had not received their full and just share of the whole estate as they would, had it been properly administered. This is not claimed ; but only that the older heirs had received, of the assets collected, more than the younger heirs would have, even after the assignment to them by the trustees. The action of the trustees was fully sustained by the Court of Errors and Appeals.

It is impossible to hold them liable according to the prayers of this bill. They had a right to use all of the funds for their indemnity.

The situation presented to them was this :

There were no debts outstanding—the older heirs were precluded by lapse of time, the younger heirs released ; and the older heirs had received, before this judgment of George Tunnell's assets, far more than the younger heirs.

With respect to the release, there was no dispute as to its execution. What it means, it shows for itself. Its validity is for the Court to decide.

*Robinson*, replied for the complainant, in the first case.

*Laytou*, replied for the complainant, in the second case.

THE CHANCELLOR :—

With respect to the amount of the judgment, the sum of $28.468.99, ascertained by the referees, and for which judgment was rendered, must be held to be conclusive as representing the balance of the personal estate of Miers Burton, deceased, then chargeable to George Tunnell and his trustees, in his administration, subject to such credits as might have arisen since the date of said judgment, April 19, 1850. The payments prior to that date, made by Tunnell to the widow and heirs, before his removal, those made to the remaining administrator by the trustees after Tunnell's removal, and also some payments made by the assignees in trust to Benjamin Burton, as guardian of the then minor children of Miers Burton, deceased, were all proper credits in the settlement upon which that judgment was. based ; and they must now be presumed to have been allowed in ascertaining the amount of the judgment ; so that the judgment has to be treated as assets for collection and distribution to the widow and children, subject only to such credits or matters of defense as may have arisen since its date. · Precisely in what way the judgment was ascertained, and whether or not it was correctly ascertained, cannot be known from any data in this cause ; nor is inquiry on that point material, since the judgment, as it stands, is conclusive, as to the amount of distributed assets at hand at the date of its recovery.

Subsequent to that date, there were some small payments made to Woolsey Burton, the remaining administrator, by Isaac Tunnell, one of the sureties. These payments, when properly applied to the accruing interest on the judgment, would leave a balance, so far as any credits arising since the recovery of the judgment was proved, of $27,785.86, with interest from January 8, 1851. It therefore represents that amount of distributable assets at that date.

Now, the prayer of the bill is, that the further collection of this judgment may be restrained, upon the ground

that there are no outstanding debts to be paid ; that the widow and five elder children of the intestate have received, out of other assets collected by George Tunnell, their full share of the whole, and that the three younger children who thus were alone interested in the fruits of their judgment, have, upon a settlement with them, released the sureties.

It may be assumed, considering the long lapse of time since Miers Burton's death, the solvency of his estate and the absence of evidence of any outstanding debts against the estate that no such debts now unpaid, or at least recoverable, exist.  Consequently the balance of this judgment, as just stated; with its interest, is assets, collectible for the next of kin, *i. e.* the widow and children, or for.such of them as are not shewn to have received satisfaction for their shares, or to have released the sureties.  It was decided, upon the former hearing of the cause, that it is, in equity, under the circumstances of this case, an available defense to the sureties in the judgment to shew against even the administrator of the estate, that the next of kin have some of them received, and the rest released, their shares of the judgment.  Whether the assets represented by this judgment were in part satisfied as to some of the next of kin, *i. e.* the widow and elder children, and released as to the younger children, has been the main question in controversy throughout the cause.  That it might be tried between proper parties, the cause was ordered to stand over in order to join, as defendants, all the next of kin, or the legal representatives of such of them as were deceased.  That has been done, their answers filed, further testimony taken, the case re-argued, and the main question now comes before me for a final judgment. I will proceed to consider it.

*First*, then, it may be at once concluded that the three younger children, who, with this complainant Benjamin D. Burton, executed the release of May 8, 1861, to George

Tunnell's sureties, have no claim under this judgment. The release is abundantly proved, has not been successfully impeached for fraud or mistake, and was executed and delivered to the sureties upon a sufficient considera-tion, which was the assignment to them, the younger children, of certain assets held by the sureties under an assignment from George Tunnell, made for their indemnity. The release was executed expressly, as well to discharge the sureties in the administration of George Tunnell as his sureties in the guardianship of these children. The assets assigned to these children as the consideration for the release, were accepted by them as satisfaction in full of their share of the estate, and must be so treated. *Next*, as to the share of Benjamin D. Burton. He too, has no claim under this judgment. True, it does not appear that he received his full share of the distributable assets collected by George Tunnell. The proof is, that his share respectively of the balances shown by the three distributive accounts passed by Tunnell, amounting, in all, to $1624 90, were paid to his guardian, Benjamin Burton. His share of the amount in which the Orphans' Court surcharged the last account, *i. e.* his share of the $5481.57 is not shown to have been paid. Nevertheless, any claim on his part is based by the release in which he joined. Though he did not share in the assets assigned to the younger heirs, yet the assignment of them by the trustees is a consideration which affects him; for it was procured in part through his agency, he being actively instrumental in bringing about the entire arrangement. He evidently considered that the judgment against Tunnell's sureties was worthless, and that nothing would be lost by a release of his interest in it; that out of the other assets, the widow and the elder children had, in the distributions made by Tunnell, received as much or more than the younger children would realize out of the assets in the hands of Tunnell's assignees in trust; and desiring, as a matter of justice, that the younger children

should receive these remaining assets, and as an inducement to the arrangement, he signed the release. He cannot complain that he is held concluded by his voluntary release, executed upon a sufficient consideration without fraud or influence exerted upon him.

We now pass to the case of the widow and four other elder children of Miers Burton, deceased. They have never released any claim they might respectively have under this judgment. As to them, the sole question is, have their shares of the unappropriated balances of personal estate, collected by George Tunnell, or the shares of any of them been satisfied? The precise point of inquiry, it should be observed here, is not whether they have received any payments made directly on this judgment, for it is agreed that they have not; but whether, as might be the case, they, or any of them, since its recovery, have received, out of the distributed assets not covered by the judgment, their full share of the several unappropriated balances of personal estate collected by George Tunnell as shewn by his several administration accounts and which constitute entire liability of Tunnell and his sureties to the next of kin. For if out of any part of the personal estate they have received what is equivalent to a full share of the whole, of course, they can have no claim upon this judgment or upon any sums collected under it, but its fruits if collected would belong to those of the children who did not receive, out of the distributed assets, their full share of the personal estate, and it would be subject to the operation of their release. If however, what the widow and elder heirs received out of the distributed assets should be found to fall short in amount of their share of the unappropriated balances of personal estate collected by Tunnell, then to the extent of such deficiency, they will have a claim upon the assets represented by this judgment, if collected. This shews the precise point to which our inquiry must be directed; first, what were the unappropriated balances of

personal estate collected by George Tunnell ?   Next, how far does it appear in evidence that the widow and elder heirs received, out of the distributed assets, their share of such balances ?   The unappropriated balances of personal estate collected by Tunnell are shewn by his three administration accounts passed, respectively, December 10, 1839, October 8, 1840, and January 7, 1842, to which must be added the sum in which the Orphans' Court surcharged the last of the accounts.   They are as follows :

Balance on account of Dec. 10, 1839.....$19,510.93
   "       "       "       "    Oct.  8, 1840.....    8,000.42¾
   "       "       "       "    June  7, 1842.....    4,257.25
Amount surcharged upon third account..    5,481.57
                                          ——————————
Total .................................$37,248.17¾

With those administration accounts, there were also passed distributive accounts shewing the net balance for distribution, the shares of the widow and children respectively, and also, certain credits to the administrator for sums paid on account of these shares.   At the hearing, it was agreed that these distributive accounts be admitted as evidence for all that appears upon them.   Now upon the examination of the proofs with respect to the widow and each of the four children whose claims are not disposed of by the release, I find these results.

(1) Woolsey Burton received from George Tunnell before his removal from office, the sum of $3506.37 which was in excess of his share of the unappropriated balance of the personal estate collected by George Tunnell.

(2) Elizabeth Burton, the widow, did not receive her full share, and there remain due to her personal representatives $1659.22, being the balance of her share of the first distributive account with interest from Dec. 10, 1839 ; $2663.43 being her share of the second distributive account with interest from Oct. 8, 1840, and $3240.23 being

her share of the third distributive account with interest from June 7, 1842.

(3) To Mrs. Mary A. Irons there is due the sum of $456.79, being the balance unpaid of her share of the sum surcharged in the third distributive account, with interest from June 7, 1842.

(4) William E. Burton is entitled to receive, for balance unpaid of his share of the sum so surcharged, the sum of $810.05, with interest from June 7, 1842.

(5) To the personal representatives of Sallie E. Waples, for the balance unpaid of her share under the third distributive account as surcharged by the Orphans' Court, there is due the like sum of $810.05 with interest from June 7, 1842.

These several sums the administrator d. b. n. is entitled to collect under the judgment ; and against the collection of any further or other sums under said judgment the administator must be perpetually enjoined, and the complainant and defendant, respectively, must each pay his own costs in this cause.